**CHORA YOUNG & MANASSERIAN LLP**
Paul P. Young (SBN 257571)
Joseph Chora (SBN 284700)
Kevin C. Ronk (SBN 241598)
650 Sierra Madre Villa Avenue, Suite 304
Pasadena, California 91107
Tel.: (626) 744-1838
Fax: (626) 744-3167
Email: paul@cym.law
Email: kevin@cym.law

Attorneys for Plaintiff/Creditor
The Bloom Firm, a Professional Corporation

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DIVISION OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>MICHA STAR LIBERTY,<br><br>    Debtor. | Case No.: 24-40401 WJL<br><br>Chapter 13<br><br>Adversary No: _____ |
| THE BLOOM FIRM, A PROFESSIONAL CORPORATION, A California Corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>MICHA STAR LIBERTY, an individual,<br><br>    Defendant. | **COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**<br><br><br>Judge:    Hon. William J. Lafferty |

1

COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

Plaintiff and creditor The Bloom Firm, A Professional Corporation ("Plaintiff" or "Bloom"), as plaintiff in the above-entitled adversary proceeding, files this complaint objecting to the dischargeability of certain debts of Micha Star Liberty ("Defendant" or "Liberty"), and respectfully alleges upon knowledge, information and belief as follows:

## NATURE OF THIS ACTION

1.     This adversary proceeding is brought to object to the dischargeability of a debt for money owed by Liberty to Bloom in the amount of $1,870,120.85, or such other amount shown according to proof at trial (hereinafter, the "Debt"). The Debt should be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4) & (a)(6).

## JURISDICTION

2.     This Court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to a case under title 11, in the United States Bankruptcy Court for the Northern District of California – Oakland Division, captioned *In re Micha Star Liberty*, Case No.4:24-bk-40401-WL (the "Bankruptcy Case"), pursuant to 28 U.S.C. §§ 157 and 1334(b).

3.     This action is brought as an adversary proceeding pursuant to Rule 7001(6) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") related to the Bankruptcy Case.

4.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 157(b)(2)(J). Bloom consents to the entry of final orders or judgment by the Court in this adversary proceeding.

5.     Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

6.     The statutory predicates for the relief requested herein are Sections 523(a)(2)(A), (a)(4) and (a)(6) of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 7001(6) and 4007.

/ / /

## PARTIES

7.     Plaintiff Bloom is a California professional law corporation with its principal place of business located in Los Angeles County, California.

8.     Bloom has filed Proof of Claim 6-1 in the above-entitled bankruptcy case.

9.     Defendant Micha Star Liberty is an individual who, upon information and belief, resides in Oakland, California.

## RELEVANT FACTS

10.     On or about August 23, 2019, Liberty's law corporation, Liberty Law Office, Inc. ("LLO"), entered into a Joint Venture Agreement (the "JVA") with Bloom.  A true and correct copy of the JVA is attached hereto as **Exhibit A**.

11.     Problems with the JVA arose quickly thereafter, and Bloom withdrew from the JVA and demanded its share of attorney fees from the cases subject to the JVA.

12.     After Bloom served a demand for arbitration pursuant to the JVA, Liberty and LLO filed a declaratory relief action in Alameda County Superior Court entitled *Liberty, et al. v. Bloom, et al.*, Case No.: HG20079536) ("Underlying Action") to determine whether a valid fee sharing agreement existed and was enforceable; whether Bloom was entitled to quantum meruit fees if the agreement was unenforceable; and a stay of arbitration pending a decision on the enforceability of the agreement.

13.     Bloom moved to compel arbitration, which was unopposed, and a final arbitration award ("Award") was issued on August 25, 2021, after over three weeks with 7 days of argument and testimony.

14.     The arbitration panel entered an award requiring LLO to pay Bloom a total of $821,400.70 on resolved cases and 50% of the amounts due on delineated cases (in an amount not less than $491,177.50) that were still unresolved as of the date of the Award.   The arbitration award also required LLO to pay Bloom an additional $160,020.00 for arbitration fees.  On January 28, 2022, the court in the Underlying Action granted Bloom's petition to confirm the Award.

Case: 24-40401     Doc# 58     Filed: 07/01/24     Entered: 07/01/24 17:43:35     Page 3 of 38

15.     On September 13, 2022, the Court entered an amended judgment nunc pro tunc, as of March 23, 2022, in the total amount of $940,998.02, plus interest of $246.14 for each day after April 4, 2022, until the judgment is entered, in favor of Bloom and against LLO ("Judgment").  In addition, the Judgment required LLO to pay Bloom 50% of fees obtained from several designated cases that had not yet been litigated to a resolution (in an amount not less than $462,219.50).

16.     Liberty appealed the Judgment, which was affirmed by the Court of Appeal, First Appellate District (Case No.: A165269) on February 26, 2024.

17.     On March 13, 2024, Liberty petitioned the Court of Appeal for a rehearing.  On March 20, 2024, the Court of Appeal modified the Opinion, with no change in the Judgment.  On the same day, Liberty's petition for rehearing was denied.

18.     On December 22, 2022, just approximately three months after the Judgment was entered *nunc pro tunc*, Liberty formed Liberty Law Incorporated, a California corporation ("LLI"), in which Liberty is the President, Treasurer and Secretary.

19.     On February 22, 2023, Liberty caused LLO to transfer $2,424,420.64, the entire balance of its client trust account ("IOLTA") to LLI.

20.     Through post-judgment discovery of bank records for bank accounts in the name of LLO, Bloom learned that between the time of the Demand for Arbitration to the time Liberty closed LLO's bank accounts, Liberty regularly used LLO's business checking account to pay for her personal expenses, such as: (1) Vehicle payments/lease expenses to BMW BMWFINANCIAL SVS ("BMW Financial Services") and MBFS.COM ("Mercedes-Benz Financial Services"), in a grand total amount of at least $12,865.63; (2) utility bills in a grand total amount of at least $6,480.75; and (3) residential property tax payments in a grand total amount of at least $40,321.79.  During this same period, Liberty also regularly used LLO's Chase credit card for personal expenses, such as payments for her manicures at Nail Today in a grand total of at least $1,440.00.

21.     On October 13, 2023, Bloom filed a complaint for recovery of fraudulent transfers against Liberty, LLO, LLI and Linda Culler, Trustee of the Rising Star Trust dated October 15, 2021 (the "Trust"), commencing the case entitled *The Bloom Firm v. Liberty, et al.* (Case No. 23CV047497), which is currently pending in the Superior Court for the State of California, County of Alameda (the "UVTA Action").

22.     On October 30, 2023, Bloom moved for an amended judgment to name LLI, and Liberty, individually, as judgment debtors under an alter-ego and successor liability theories, respectively.

23.     The court in the Underlying Action found that Liberty is the alter ego of LLO and that LLI is the successor to LLO and granted the motion to amend the judgment to include Liberty, individually, and LLI as judgment debtors.

24.     On January 26, 2024, the court in the Underlying Action entered the Amended Nunc Pro Tunc Judgment ("Amended Judgment") adding Liberty and LLI as judgment debtors.

25.     On March 1, 2024, Liberty was scheduled to appear for judgment debtor examinations of LLO and LLI.  At 6:03 p.m. on February 29, 2024, attorney Sarah Little, informed counsel for Bloom that Liberty would not be appearing for the examination.  Attorney Little gave little to no reason for Liberty's refusal to appear other than that Liberty would be filing for bankruptcy, which would be prepared to file "immediately."  In a second email from attorney Little on February 29, 2024, Ms. Little informs attorney Young,

> Micha will not be operating Liberty Law as a separate entity going forward.  While you are correct that her personal bankruptcy will not stay collection against her corporation(s), Liberty Law Inc. is no longer operating and she will proceed to practice law as sole proprietorship.  I will not be filing a corporate bankruptcy, as there are no assets to administer.

26.     In early March 2024, Liberty paid $400,000.00 to Bloom towards the Amended Judgment.  Bloom is informed and believes, and based thereon, alleges

Liberty's purpose in making the payment to Bloom was to reduce the amount of her debt to her creditors in order to qualify for a chapter 13 case.

27.     On March 21, 2024, Bloom filed a notice of motion and motion for appointment of a limited receiver (the "Motion for Limited Receiver") in the UVTA Action.

28.     On March 22, 2024, Liberty filed her voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "Petition").

29.     In the Petition, Liberty and her bankruptcy counsel improperly listed LLO and LLI as "dbas" of Liberty despite the fact the Petition form specifically states that corporations are not to be listed as dbas for the debtor.

30.     That same day, Liberty, LLO, LLI and the Trust (collectively referred to as the "Liberty Parties") filed a notice of filing voluntary petition for bankruptcy and stay proceedings (the "Notice of Stay") in the UVTA Action.  The Notice of Stay attaches the Petition and states,

> **PLEASE TAKE NOTICE** that Defendant Micha Star Liberty, ***dba Liberty Law, fdba Liberty Law, Inc., fdba Liberty Law Office, Inc.*** (the "Debtor") filed a voluntary petition for bankruptcy on March 22, 2024. A true and correct copy of the Voluntary Petition for Bankruptcy is attached hereto as Exhibit A.

> **PLEASE TAKE FURTHER NOTICE** that pursuant to 11 U.S.C. § 362(a), the Debtor's filing of the Voluntary Petition for Bankruptcy operates as a stay, applicable to ***all entities***, of, among, other things: (a) the commencement or continuation of all judicial, administrative, or other actions or proceedings against the Debtor (i) that were or could have been commenced before the commencement of the Debtor's case or (ii) to recover any claims against the Debtor that arose before the commencement of the Debtor's cases; (b) the enforcement, against the Debtor or against any property of the Debtor's bankruptcy estates, of a judgment obtained before the commencement of the Debtor's cases; or (c) any act to obtain possession of property of or from the Debtor's bankruptcy estate, or to exercise control over property of the Debtor's bankruptcy estate.

(Emphasis added.)

In response to the improper Notice of Stay, on March 26, 2024, Bloom filed the *Notice the Proceedings are Not Stayed as to Non-Debtors* (the "Notice Re Non-Debtors") in the UVTA Action, asserting that the stay does not apply to non-debtors LLO and LLI.

### COUNT I

**For A Determination the Bloom Debt is Non-Dischargeable Pursuant to**

**11 U.S.C. § 523(a)(2)(A)**

**(Against Micha Star Liberty)**

31.     Bloom repeats and re-alleges the allegations set forth in paragraphs 1 through 30 of this Complaint as if set forth at length herein.

32.     Bloom is informed and believes, and based thereon alleges, Liberty was the sole owner and officer of LLO and LLI throughout their existence.

33.     Due to Liberty's repeated payment of her personal expenses from LLO's bank account, the Court in the Underlying Action found Liberty to be the alter ego of LLO.  In its tentative ruling the Court stated "… Bloom has shown that '(1) the [party] to be added as judgment debtor[] had control of the underlying litigation and [was] virtually represented in that proceeding; (2) there is such a unity of interest and ownership that the separate personalities of the entity and the owner[] no longer exist[s]; and (3) an inequitable result will follow if the acts are treated as those of the entity alone.'"

34.     As the sole officer, owner and alter ego of LLO, Liberty owes a debt to Bloom for money which debt was obtained by a false representation.  Specifically, on August 23, 2019, LLO and Liberty (as alter ego of LLO) represented in writing to Bloom in Section V of the JVA, LLO that, "[a]ny fees earned on any existing case contributed to the Joint Venture by LIBERTY shall be paid to LIBERTY 50% and shall be paid to BLOOM 50% of the attorneys' fees."  LLO and Liberty also represented, "[a]fter the effective date of the Joint Venture, all new cases retained by LIBERTY for the Joint Venture, when fees are earned shall be paid out as follows:

the attorney's fees will be divided 25% (or 30% if there is a trial of the matter) to Page 5 of 10 Bloom Firm/Liberty Law Joint Venture Agreement LIBERTY and 75% (or 70% if there is a trial) to BLOOM."

35.     Bloom is informed and believes, and based thereon, alleges that Liberty had no intention of paying Bloom pursuant to the JVA.

36.     Liberty knew the representations in Section V of the JVA were false when they were made and made the representations to induce Bloom to rely on them, and Bloom reasonably relied on them to its detriment.

37.     Liberty owes a debt to Bloom for money which debt was obtained by actual fraud by virtue of Liberty's fraudulent transfers of assets from LLO for Liberty's personal expenses after the time LLO become liable under the Judgment and by virtue of setting up LLI and Starry Sky Holdings, LLC ("Starry Sky") and transferring substantially all of LLO's assets, including the attorneys' fees collected by Liberty under the JVA, to LLI and Starry Sky to hinder delay and defraud Bloom from collecting on the Amended Judgment.

38.     Bloom is further informed and believes, and based thereon, alleges that Liberty caused LLO to transfer funds for Liberty's personal benefit to pay her personal expenses, and to transferred funds to LLI and/or Starry Sky for the sole purpose of hindering, delaying and defrauding Bloom to keep her from collecting on the Judgment.  In fact, it was due to such transfers to pay her personal expenses and to LLI that caused the Court in the Underlying Action to find that Liberty is the alter ego of LLO and LLI is a successor in interest to LLO.  Thus, the court in the Underlying Action found that Liberty was responsible for the Judgment (a debt for money).  The Debt was obtained by Liberty by virtue of fraudulent transfers Liberty caused to be made for her own benefit and to prevent Bloom from collecting on the Judgment.

/ / /

/ / /

39.     Bloom has sustained damages and losses as the proximate consequence of the false representations of Liberty, and the fraudulent transfers made by Liberty from one of her entities to another to hinder, delay and defraud Bloom preventing her from collecting on Debt.

40.     In view of the foregoing, Bloom respectfully requests the Court enter an order excepting the $1,870,120.85 from discharge under 11 U.S.C. § 523(a)(2)(A).

## COUNT II

**For A Determination the Bloom Debt is Non-Dischargeable Pursuant to 11 U.S.C.**
**§ 523(a)(4)**

**(Against Micha Star Liberty)**

41.     Bloom repeats and re-alleges the allegations set forth in paragraphs 1 through 40 of this Complaint as if set forth at length herein.

42.     Bloom is informed and believes, and based thereon, alleges that Liberty obtained the Debt by fraud or defalcation while acting in a fiduciary capacity.

43.     Liberty, the sole officer, owner and alter ego of LLO, caused LLO to enter into a joint venture agreement with Bloom.  Joint venturers have a fiduciary duty to act with the highest good faith towards each other regarding affairs of the partnership or joint venture. *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524–25 (2008).

44.     As the sole officer, owner and alter ego of LLO, a party to the joint venture with Bloom, Liberty owed Bloom fiduciary duties of loyalty and to account to Bloom for the attorneys' fees owed to Bloom.  The JVA states, in part, "[a]ny fees earned on any existing case contributed to the Joint Venture by LIBERTY shall be paid to LIBERTY 50% and shall be paid to BLOOM 50% of the attorneys' fees." LLO and Liberty also represented, "[a]fter the effective date of the Joint Venture, all new cases retained by LIBERTY for the Joint Venture, when fees are earned shall be paid out as follows: the attorney's fees will be divided 25% (or 30% if there is a trial

of the matter) to Page 5 of 10 Bloom Firm/Liberty Law Joint Venture Agreement LIBERTY and 75% (or 70% if there is a trial) to BLOOM."

45.     Liberty collected attorneys' fees under the JVA for which she had a fiduciary duty to account and turnover to Bloom.  Instead of accounting for and paying the attorneys' fees under the JVA, Liberty fraudulently transferred the attorneys' fees from LLO to pay Liberty's personal expenses and transferred attorneys' fees due Bloom to LLI and Starry Sky Holdings, LLC in order to hinder, delay and defraud Bloom to keep her from collecting the attorneys' fees.

46.     Bloom has sustained damages and losses as the proximate consequence of the false representations of Liberty and the fraudulent transfers made by Liberty.

47.     In view of the foregoing, Bloom respectfully requests the Court enter an order excepting the $1,870,120.85 from discharge under 11 U.S.C. § 523(a)(4).

## COUNT III

**For A Determination the Bloom Debt is Non-Dischargeable Pursuant to 11 U.S.C.**

**§ 523(a)(6)**

**(Against Micha Star Liberty)**

48.     Bloom repeats and re-alleges the allegations set forth in paragraphs 1 through 47 of this Complaint as if set forth at length herein.

49.     Liberty intentionally and maliciously caused injury to Bloom by collecting attorneys' fees under the JVA and not paying Bloom her share of the fees even after Bloom obtained the Judgment.

50.     Bloom is informed and believes, and based thereon, alleges Liberty also intentionally and maliciously caused injury to Bloom by paying Liberty's personal expenses from LLO's bank account, by setting up LLI and Starry Sky after the Judgment was entered, and transferring the attorneys' fees collected under the JVA to LLI and Starry Sky Holdings, LLC with the intent and for the purpose of hindering, delaying and defrauding Bloom to keep her from collecting on the Judgment.

/ / /

51.    Bloom has spent substantial resources and incurred significant attorneys' fees in its efforts to collect the Judgment in the Underlying Action, the UVTA Action and protecting its rights in the Bankruptcy Case.

## CONCLUSION

WHEREFORE, Bloom respectfully requests the Court enter a judgment against Liberty denying Liberty a discharge under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6) and granting Bloom such other and further relief as this Court may deem just proper.

Respectfully submitted,

DATED: July 1, 2024                    **CHORA YOUNG & MANASSERIAN LLP**

By:  _/s/ Kevin Ronk_____
         Kevin Ronk
         Paul P. Young
         Attorneys for Plaintiff/Creditor
         The Bloom Firm

# EXHIBIT A



## AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

---

**Case Number: 01-20-0005-4767**

**The Bloom Firm,**

     **Claimant,**

**-vs-**

**Liberty Law Office, Inc.,**

     **Respondent.**

---

## FINAL ARBITRATION AWARD

We, Peter K. Rundle, Carl F. Ingwalson, Jr. and Sol Rosenthal, THE UNDERSIGNED ARBITRATORS ("the Panel"), having been designated in accordance with the arbitration agreement contained in Section X, page 8, of the August 15, 2019 document entitled *Joint Venture Agreement between The Bloom Law Firm and Liberty Law Office* ("Agreement" or "JVA"), having been duly sworn, and acting under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") as amended and effective October 1, 2013, including the Procedures for Large, Complex Commercial Disputes (with subsequent revisions to the schedule of fees, if any) ("AAA Rules"), having conducted a multi-day evidentiary hearing during which the Parties each presented oral and documentary evidence in support of their claims and

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Page 1 of 24

Case: 24-40401   Doc# 58   Filed: 07/01/24   Entered: 07/01/24 17:43:35   Page 13 of 38

**Exhibit A - p. 1**

defenses, having received and considered carefully all testimony and exhibits offered by the Parties, having confirmed with the Parties that they had no additional witnesses, documents or evidence to offer, having received and considered the Parties' post-hearing written submissions and oral presentations, and good cause appearing therefor, now issue this Final Arbitration Award as follows:

## A. THE PARTIES, THEIR REPRESENTATIVES & PLACE OF ARBITRATION.

1. Claimant is The Bloom Firm ("Claimant" or "Bloom"), a corporation. Respondent is Liberty Law Office, Inc. ("Respondent" or "Liberty") - also a corporation. Bloom and Liberty, which may be referred to collectively as "the Parties," are sophisticated law firms.

2. Bloom originally presented its claims through its own attorneys (*e.g., in pro per*). Later, Browne George Ross O'Brien Annaguey & Ellis LLP ("Browne George") joined Bloom's attorneys in representing Bloom in this arbitration.

3. Liberty was originally represented by Panish Shea & Boyle LLP. Subsequently, Finnerty Law Offices, Inc. took over Liberty's representation. Thereafter, Liberty was represented in this arbitration by The Office of Michael Tenenbaum, Esq.

4. Pursuant to the stipulation of the Parties, the evidentiary hearing was held remotely using the Zoom platform with the place of arbitration deemed to be Los Angeles, California.

## B. THE PARTIES' AGREEMENT.

### *The Arbitration Clause*

5. The Parties agreed to arbitrate their disputes pursuant to Section X of the Agreement, which states:

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Page 2 of 24

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 2 of 38

Exhibit A - p. 2

"**ARBITRATION**   Any controversy relating to the Agreement, after the Parties have in good faith attempted to settle the controversy, shall be settled under the rules of the American Arbitration Association.  The Board of Arbitrators shall consist of not more than three (3) persons selected by the Parties.  The Arbitrators shall conduct the hearing in Los Angeles, California.  The Parties' [sic] shall not raise *forum non conveniens* as an objection to the location of the arbitration.  The decision of the arbitrator [sic] is binding upon all Parties."

*Applicable Law*

6.      Section 11.1 of the Agreement provides that ". . . [it] shall be governed by, and construed in accordance with, the laws of the State of California."

**C.      THE PARTIES' PLEADINGS, CLAIMS AND DEFENSES.**

7.      Bloom initiated this arbitration by filing its Demand for Arbitration dated June 3, 2020 in which it alleged two causes of action, to wit:  (a) breach of contract, and (b) breach of the implied covenant of good faith and fair dealing.  In its demand, Bloom sought general and special damages, statutory penalties, punitive damages, attorney's fees, costs and expenses, as well as such other and further relief as the Panel might deem just and proper.

8.      Liberty did not submit an Answering Statement or other pleading responding to Bloom's June 3, 2020 demand.  Therefore, Liberty was deemed to have denied the allegations and claims asserted by Bloom.

9.      With the Panel's permission, the Parties subsequently amended their pleadings culminating in Bloom's Second Amended Demand for Arbitration and Liberty's First Amended Counter-Claims, both dated March 3, 2021.  On March 12, 2021, Bloom and Liberty filed their Answers in response to one another's amended pleadings.

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401   Doc# 58   Filed: 07/01/24   Entered: 07/01/24 17:43:35   Page 3 of 24 38

Page 3 of 24

**Exhibit A - p. 3**

10.    Bloom's Second Amended Demand for Arbitration alleges three causes of action, to wit:  (a) breach of contract; (b) breach of the implied covenant of good faith and fair dealing; and (c) *quantum meruit*.  Bloom seeks the following relief through its Second Amended Demand:

"1.    For an award of general damages against Respondent on Claimant's First and Second Causes of Action for the Resolved Cases in an amount to be proven at the time of arbitration, and which amount Claimant believes is approximately **$992,687.50;**

2.    In the alternative, for an award for the reasonable value of services rendered by Claimant in connection with the Resolved Cases on Claimant's Third Cause of Action in an amount to be proven at the time of arbitration, and which amount Claimant believes is approximately **$517,428.00;**

3.    For a declaration that Respondent's obligation to make payments owed under the JVA is ongoing with respect to the Unresolved Cases, and that Respondent is not excused from making payments under the JVA due to any breach, failure of consideration, or failure to perform by Claimant prior to the date of award, and that Respondent's obligation to make payments under the JVA is not excused or reduced based on Respondent's expenditure of time, money, or effort prior to the date of award;

4.    In the alternative, for an award for the reasonable value of services rendered by Claimant in connection with the Unresolved Cases on Claimant's Third Cause of Action in an amount to be proven at the time of arbitration, and which amount Claimant believes is approximately **$778,835.00;**

5.    For an award of special damages against Respondent to be proven at the time of arbitration;

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 4 of 24

38

**Exhibit A - p. 4**

6.    Statutory penalties against Respondent;

7.    For an award of all reasonable attorneys' fees, costs and expenses incurred in connection with this proceeding pursuant to the rules and procedures of the American Arbitration Association and applicable law;

8.    For such other and further relief as the Arbitrator [sic] may deem just and proper."

11.    On March 12, 2021, Liberty filed its Answer to Bloom's Second Amended Demand for Arbitration generally denying the allegations and claims asserted in the amended demand, and alleging the following affirmative defenses, to wit:  (a) illegality; (b) fraud; (c) excuse; (d) unenforceability as a violation of California Rules of Professional Conduct; (e) serious legal and ethical violations precluding *quantum meruit*; and (f) unclean hands. Additionally, Liberty "incorporate[d] by reference all of the allegations in its First Amended Counter-Claims.  Finally, Liberty prayed for the following relief:

"A. That Liberty Law be awarded all relief sought in its First Amended Counter-Claims;

B.    That The Bloom Firm take nothing on its Second Amended Demand for Arbitration;

C.    All costs and expenses to which Liberty Law may be entitled under California law and the Commercial Arbitration Rules of the American Arbitration Association; and

D.    Such other relief as the Panel may deem just and proper."

12.    On March 3, 2021, Liberty submitted its First Amended Counter-Claims alleging four causes of action, to wit:  (a) rescission – illegality; (b) rescission – consent obtained through fraud; (c) promissory estoppel; and (d) breach of contract.  In its amended counter-claims, Liberty sought rescission

FINAL ARBITRATION AWARD
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 5 of
38

Page 5 of 24

**Exhibit A - p. 5**

of the Agreement, damages, prejudgment interest, costs and expenses, together with such other and further relief as the Panel might deem just and proper.

13.    On March 12, 2021, Bloom filed its Answer to Liberty's amended counter-claims, generally denying the allegations and claims asserted therein, and alleging seven affirmative defenses.

14.    On or about March 29, 2021, the AAA transmitted a letter to the Parties reminding them of their obligation to submit required payments of administrative and other fees to the AAA.

15.    On April 23, 2021, the AAA transmitted a letter to the Parties stating that it "ha[d] not received the final administrative fee for your [*i.e.* Liberty's] counterclaim.  Therefore, we are returning the counterclaim as it is not properly filed and it may not be considered by the Panel."

16.    Accordingly, the pleadings before the Panel for consideration in this matter are limited to Bloom's Second Amended Demand for Arbitration and Liberty's Answer thereto.  All other submitted pleadings were either superseded, deemed not filed or rendered moot as a consequence (*e.g.*, answer to counter-claim deemed not filed).

**D.    PROCEDURAL HISTORY.**

***Condition Precedent Met***

17.    The Agreement provides that the Parties shall attempt in good faith to settle their dispute before resorting to arbitration.  Counsel confirmed to the Panel that they had attempted, without success, to resolve their dispute before initiating arbitration.  Accordingly, the Panel finds that the arbitration was duly initiated pursuant to the Agreement.

***Alameda County Litigation***

18.    Shortly after the Panel was constituted and confirmed, Liberty raised objections to the Panel's jurisdiction to hear Bloom's claims, and

FINAL ARBITRATION AWARD
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 6 of 24
38

Page 6 of
Exhibit A - p. 6

declined to participate in the scheduling or conduct of the Panel's initial Preliminary Hearing. In asserting its jurisdictional objection, Liberty transmitted an email to the AAA on November 18, 2020 raising a number of objections, and attached to that email a copy of a complaint it had filed on November 9, 2020 in the Superior Court of California, County of Alameda, seeking declaratory relief. On November 18, 2020, the AAA transmitted to the Panel a number of items, including Liberty's email and declaratory relief complaint.

19. In its Complaint, styled *Micha Star Liberty, an individual; and Liberty Law Office, Inc., a California corporation, v. Lisa Bloom, an individual; The Bloom Firm, a California Corporation; and DOES 1-25, inclusive, Defendants,* bearing Case No. HG20079536 (the "Alameda County Action") the plaintiffs there sought the following relief:

"A. A declaration of the Court regarding the following questions:

i. Whether a valid fee sharing agreement was formed in the JVA and now exists between Plaintiffs and Defendants.

ii. Whether Defendants are entitled to relief under the doctrine of quantum meruit when the attorney fee sharing provision is unenforceable.

B. An Order that any arbitration is stayed until a final determination of this Declaratory Complaint.

C. For costs of suit, including attorney's fees; and

D. For such other relief as the court deems appropriate and just."

[Alameda County Action Complaint ("Complaint"), 13:14-23]

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 7 of 24 / Page 19 of 38

**Exhibit A - p. 7**

20.    In the Alameda County Action, Liberty primarily based its request for relief on the ground that Bloom had failed to comply with *California Rule of Professional Conduct 1.5.1*. Specifically, Liberty alleged: "Where attorneys fail to comply with the requirements of CRPC Rule 1.5.1 and do not obtain written, informed consent from the client, any fee sharing agreement between them is rendered unenforceable as a matter of public policy. *See Chambers, supra,* 29 Cal. 4th at 156-61; *see Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal. 5th 59, 73-74." [Complaint, 12:17-21]

21.    On December 15, 2020 Bloom filed a Motion to Compel Arbitration and Stay Proceedings ("Motion to Compel Arbitration") with respect to the Alameda County Action. Bloom provided the Panel a copy of said Motion on February 25, 2021.

22.    On January 19, 2021, Liberty transmitted to the Panel a copy of its Notice of Non-Opposition filed in the Alameda County Action in response to Bloom's Motion to Compel Arbitration.

23.    On February 11, 2021, Liberty transmitted to the Panel copies of the Alameda Superior Court's Minutes and Order granting Bloom's un-opposed Motion to Compel Arbitration.

24.    In light of the AAA's return of Liberty's counter-claim(s) as not properly filed for failure to pay necessary fees, the Panel informed counsel at the outset of the Evidentiary Hearing that it would treat the issues raised by the Alameda County Action as affirmative defenses. (Hearing Transcript [TR] 1:15-20) On July 29, 2021, during a closing hearing, counsel for Liberty and Bloom confirmed that the issues framed by the Alameda County Action were subsumed within Liberty's Answer to Bloom's Second Amended Demand for Arbitration.

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 8 of
38
Page 8 of 24

**Exhibit A - p. 8**

### E. THE EVIDENTIARY HEARING.

25.     The Evidentiary Hearing was conducted on May 3, 2021, May 4, 2021, May 5, 2021, May 6, 2021, May 7, 2021, May 10, 2021 and May 14, 2021 pursuant to written Notice of Hearing.  The hearing, conducted by Zoom in light of the COVID-19 pandemic, was "hosted" by the Parties' agreed-upon virtual hearing vendor, StoryCloud.  The Parties requested, and the Panel approved, the preparation of an official transcript of the Evidentiary Hearing based upon the audio recording created by StoryCloud.  The 1380-page transcript, containing links to the audio recording to verify its accuracy, is subject to the Parties' confidentiality stipulation – and the Panel's Order Thereon - that they be utilized solely in connection with this arbitration and any related post-hearing court proceedings.

26.     During the Evidentiary Hearing, the Parties presented oral testimony through direct and cross-examination of the following sworn witnesses:  Lisa Bloom, Sarah Bloom, Bellinda Bluntach, Debbie Chang, Veronique Conrad, Raquelle de la Rocha, Larry Elam, Arick Fudali, Ian Hansen, Micha Star Liberty, Edward J. McIntyre, John O'Connor, Braden Pollock, Greg Rizio, William Shapiro and Mark Tuft.  Messrs. McIntyre, O'Connor and Tuft provided expert testimony, with the remaining witnesses providing percipient testimony.

27.     During the Evidentiary Hearing the following exhibits were admitted:  8, 10 – 32, 34 – 38, 40, 41, 49, 54 – 58, 62, 63, 67, 78, 80, 91 – 93, 95 – 96, 98 – 101, 103 – 117, 119, 122, 123.  The Panel sustained evidentiary objections to Exhibits 118, 120 and 121 and they were not admitted.  The Panel received demonstrative exhibits A, B, C, D and E.

28.     At the end of the Evidentiary Hearing, and in response to the Chair Arbitrator's specific inquiry whether they had any additional proofs, witnesses or exhibits to offer, counsel for both Bloom and Liberty said, "No."

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401     Doc# 58     Filed: 07/01/24     Entered: 07/01/24 17:43:35     Page 9 of
38

Page 9 of 24

**Exhibit A - p. 9**

When asked whether either Bloom or Liberty had any concern or objection to raise with the Panel about anything that had occurred during the arbitration – aside from the issues raised by Liberty's jurisdictional objection – counsel for both Bloom and Liberty said, "No."

29.     Following the above-described inquiry by the Panel, counsel were invited to, and did, present their oral closing arguments.

**F.     POST-HEARING PROCEEDINGS.**

30.     Bloom and Liberty each timely submitted post-hearing closing and reply briefs.  Thereafter, the Panel conducted a short hearing via Zoom on July 29, 2021 during which certain questions were raised and discussed, at the conclusion of which the Panel declared the Evidentiary Hearing closed.

**G.     STATEMENT OF FACTS.**

31.     This Section of the Final Arbitration Award is a statement of those facts and matters found by the Panel to be true and necessary to the Final Arbitration Award.  To the extent that this recitation differs from any Party's position, that is the result of determinations as to credibility, relevance, and the weighing of the evidence, both oral and written.

32.     On August 23, 2019, after lengthy negotiations, the Parties entered into the JVA pursuant to which Bloom was generally to provide certain funding and staffing to Liberty and, in exchange, Liberty would pay Bloom designated percentages of fees recovered from clients (*i.e.,* Liberty would split its fees with Bloom).  Bloom was also to help provide legal services to clients on behalf of the JVA.

33.     The JVA provided, among other provisions, that its dissolution could occur by the "express will of either Party."  Prior to executing the JVA, the Parties recognized and discussed the possibility that Bloom might be entitled to share in the attorney's fees recovered in a case for which Bloom provided limited legal services, or in a case filed just days prior to the JVA's

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401   Doc# 58   Filed: 07/01/24   Entered: 07/01/24 17:43:35   Page 20 of
38

Page 10 of 24

Exhibit A - p. 10

dissolution. Notwithstanding its recognition that the draft language of the JVA would allow Bloom to recover the contractual share of attorney's fees under these circumstances, Liberty did not alter the relevant language of the JVA – or seek to do so – and thereafter executed the JVA.

34.    The Parties' relationship proceeded as agreed for many months. Bloom provided funding to Liberty, Bloom's attorneys and professional staff rendered services pursuant to the JVA on behalf of its clients, and Liberty advanced various case-related expenses. Eventually, however, the relationship between Liberty and Bloom deteriorated and on March 20, 2020, Bloom gave notice that it was dissolving the JVA.

35.    As of March 20, 2020, Liberty and Bloom each owed the other monies pursuant to the terms of the JVA. They agreed that as part of the winding up of the JVA, the amounts that each owed the other would be calculated, set-off as appropriate, and paid. Subsequently, the present dispute arose as to what sums, if any, are owed – and by whom and to whom – under the JVA or otherwise.

36.    All individual attorneys engaged by the Parties were at all times properly licensed to perform the legal services they provided.

37.    There was no evidence that any clients were harmed by either the formation or dissolution of the Parties' joint venture, or by Bloom's alleged breaches of the *California Rules of Professional Conduct* ("*CRPC*"). In fact, Liberty, Bloom and the joint venture clients – at all times prior to and during the joint venture – were not aware of the alleged breaches of the *CRPC*.

38.    The evidence shows that at all times during the joint venture, Bloom had failed to register as a professional law corporation. The Panel finds that, while this may be of interest to the State Bar of California, it is not a defense to the claims being asserted by Bloom in this proceeding.

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Page 3 of 24

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 23 of
38

**Exhibit A - p. 11**

39. The evidence shows that Braden Pollock, a non-lawyer and the husband of Lisa Bloom, was listed incorrectly as the Secretary and Chief Financial Officer and as a Director of Bloom on a "Corporation - Statement of Information" signed by Kemberly Carruthers, a non-lawyer employee of Bloom and filed with the Secretary of State on June 2, 2020, and as the Secretary and Chief Financial Officer and as a Director of Bloom on a "Corporation - Statement of Information" signed by Kemberly Carruthers, and filed with the California Secretary of State on November 5, 2020. The Panel finds that, while this may be of interest to the State Bar of California, it is not a defense to the claims being asserted.

40. The evidence demonstrates that signed written client consents to fee-splitting, as required by applicable Rules of the *CRPC,* were received from eight joint venture clients, but not received from the remaining joint venture clients.

41. The Parties focused a great deal of their presentations on issues involving Lisa Bloom's prior representation of Harvey Weinstein, Micha Liberty's case and personnel management style, Lisa Bloom's experience as a trial attorney, and the financial resources and professional experience of Bloom and its staff. None of the evidence presented on these issues would tend to support either Bloom's claims or Liberty's affirmative defenses.

**H.    ISSUES PRESENTED.**

42. Whether the Panel has jurisdiction over the present dispute. Liberty contends that Bloom violated multiple laws, rules of practice and regulations including, but not limited to, Sections 6126, 6160 and 6161 of *California Business & Professions Code*, Rule 3.150 of the *Rules of the State Bar*, and Rules 1.5.1, 1.16 and 5.4(a) of the *CRPC*. Liberty contends that Bloom's failure to register as a professional law corporation, or to disclose that fact to the joint venture clients, strikes at the heart of the JVA and violates the

FINAL ARBITRATION AWARD
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 42 of
38

Page 12 of 24

**Exhibit A - p. 12**

public policy of the State of California such that both the JVA and its arbitration clause are invalid.

43.    Whether, if the Panel has jurisdiction, the alleged violations described in the preceding paragraph, as well as the inclusion of a non-attorney on Statements of Information filed with the California Secretary of State, support any of Liberty's affirmative defenses

44.    Whether any other facts presented support Liberty's affirmative defenses.

45.    Whether Bloom is entitled to recover, if anything, on a contract basis (*i.e.*, pursuant to terms of the JVA) or, to the extent such recovery is not appropriate, whether it is entitled to recover the reasonable value of the services it rendered on a *quantum meruit* basis.

46.    Whether, if Bloom is entitled to a recovery, the amount of such recovery.

47.    Whether Liberty is entitled to an off-set against any damages awarded to Bloom in the amount of any funding Bloom was required to provide to Liberty, but did not.

48.    Whether, if Bloom is entitled to a recovery, prejudgment interest should be awarded.

49.    Whether attorneys' fees are available to either Party.

**I.    DISCUSSION.**

### Jurisdictional Objection and Alleged Illegality of JVA

50.    Liberty relies on *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59 (2018) in arguing that the Panel lacks jurisdiction. *Sheppard, Mullin* held that an arbitration agreement contained within an engagement agreement that violates public policy is unenforceable, 6 Cal. 5th at 74-80, and that Sheppard Mullin's engagement agreement was invalid

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 53 of 24
38

Exhibit A - p. 13

because it violated public policy by purporting to authorize a law firm to represent simultaneously two clients whose interests were in direct conflict.

51.     Liberty urges the Panel to hold that any and all violations of the *CRPC* and Rules of the State Bar of California implicate the public policy of the State of California.  On that basis, Liberty suggests that any contract – including its arbitration provision - entered into by an offending attorney or law firm is void.  Here, Liberty argues that the JVA and its arbitration provision are unenforceable because Bloom violated, among other things, *CRPC 1.5.1, 1.16* and *5.,4(a)*.

52.     As Bloom has noted, to extend *Sheppard, Mullin* to cover every regulatory violation would be to read the Supreme Court's holding as overruling, *sub silencio*, cases upholding contracts where regulatory violations existed, including those alleged in this arbitration.

53.     In *Olson v. Cohen*, 106 Cal. App. 4th 1209 (2003), former clients argued that a law firm had been "engaged in the unauthorized practice of law" and that its fee agreements were illegal and void because it failed to register as a law corporation with the California State Bar certification.  The trial court and Court of Appeal disagreed, however, with the latter stating:

> "Incorporation is not undertaken for the protection of clients. The protections for clients mandated by laws governing incorporation of law corporations . . . protect against abuses which might otherwise occur from the use of the corporate structure. Failure to comply with these requirements may result in an order to cease and desist or suspension or revocation of registration. To require disgorgement of fees because of a failure to register the corporation, on the other hand, is disproportionate to the wrong."

*Olson*, 106 Cal. App. 4th at 1215.

FINAL ARBITRATION AWARD
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401     Doc# 58     Filed: 07/01/24     Entered: 07/01/24 17:43:35     Page 26 of 24
38

**Exhibit A - p. 14**

54.     In *Steven M. Garber & Assocs. v. Eskandarian*, 150 Cal. App. 4th 813 (2007), a former client argued that a law firm's failure to register excused his obligation to pay fees.  Citing *Olson*, the Court of Appeal rejected the argument.  It reiterated that the "failure to register as a professional law corporation has no effect on the fees charged by a law firm or partnership" and noted that "[t]here is no claim here that attorneys working for Garber were not admitted to the practice of law in California," meaning there was no unauthorized practice of law.  *Id.* at 819-20.  As the court in *Garber* made clear, "*Olson* took into consideration broad questions of policy and concluded that the failure to register as a professional corporation should not have, and does not have, an impact on attorney fees."  *Id.* at 820.  See also *Frye v. Tenderloin Hous. Clinic, Inc.*, 38 Cal. 4th 23, 48 (2006) (citing *Olson* in <u>reversing</u> a Court of Appeal decision ordering disgorgement of fees earned by a nonprofit legal organization that, like Bloom, had failed to register with the State Bar).

55.     To accept Liberty's argument, the Panel would need not only to hold, contrary to *Olson, Garber*, and *Frye*, that the failure to register with the State Bar **does** affect Bloom's entitlement to fees, but also make new law by finding that **any** contract entered into by a law corporation in good standing with the Secretary of State, but not registered with the State Bar, is illegal, void as against public policy, and unenforceable.  To do so, the Panel would have to equate failure to register with the prohibition on representing clients whose interests conflict, and conclude that the former rule as well was "approved in order to 'protect the public and to promote respect and confidence in the legal profession.'"  *Sheppard*, *Mullin*, 6 Cal. 5th at 73-74.   But it was not: "[I]ncorporation as a professional corporation is not undertaken for the protection of clients."  *Garber*, 150 Cal. App. 4th at 820.  Rather, the Panel agrees with Bloom's position that *Olson*, *Garber*, and *Frye* remain good law and establish the principle that a failure to register as a professional law

FINAL ARBITRATION AWARD
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Page 15 of 24

Case: 24-40401     Doc# 58     Filed: 07/01/24     Entered: 07/01/24 17:43:35     Page 27 of
38

Exhibit A - p. 15

corporation does not deprive an attorney of a contractual right to its fees. In *Professional Responsibility* (The Rutter Group), a treatise on the Rules of Professional Conduct, Liberty's ethics expert in this matter, Mark Tuft, cites *Olson* and *Garber* and writes at paragraph 1:301:

> "A law corporation that fails to register with the State Bar is subject to disciplinary action, and its shareholders may not be protected from individual liability during the period of nonregistration. However, failure to comply with registration formalities does not alone justify disgorgement of fees earned by the corporation while unregistered, provided clients have not relied upon the existence of a corporate entity or been injured."

56. During the Evidentiary Hearing, Liberty conceded that, with the exception of the question of "whether a client can even validly consent to this document [the client consent agreements for fee sharing] in the first place, if one of the firms is not authorized to practice law," Liberty did not contend that the client consents were invalid. (May 7, 2021, Tr. 846:11-847:20.) Thus, Liberty's *CRPC* Rule 1.5.1 defense falls with the law corporation registration defense, discussed above.

57. Even if the Panel were to find merit in Liberty's jurisdictional objection based upon *Sheppard, Mullin,* the unique procedural history of this proceeding forecloses Liberty's challenge. In its various submissions to the Panel, Liberty argued that *each* Rule of the State Bar, and *each* Rule of Professional Conduct, including *CRPC* Rule 1.5.1, implicate the public policy of the State of California.

58. In its Alameda County Action, Liberty sought a declaratory judgment that because of Bloom's alleged violation of *CRPC* 1.5.1, *Sheppard, Mullin* rendered unenforceable the fee sharing provision of the JVA and, with it by implication, the JVA's arbitration provision. Bloom responded to the

FINAL ARBITRATION AWARD
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 16 of 24
38
Page 36 of

Exhibit A - p. 16

Alameda County Action with a motion to compel arbitration based upon the JVA's arbitration clause. Rather than resisting arbitration, Liberty filed a Notice of Non-Opposition. As a result, the Alameda County Court entered its Order compelling arbitration.

59. On these facts, even were *Sheppard, Mullin* to be extended to reach the unique facts of this case, Liberty would be estopped to now argue the Panel's lack of arbitral jurisdiction having consented to the Alameda County Court's Order compelling arbitration.

### *Affirmative Defenses*

60. Liberty has argued that Bloom fraudulently induced it to enter into the JVA by failing to disclose the full scope of Lisa Bloom's representation of Harvey Weinstein, as well as the fact that Bloom was not registered with the State Bar of California as a law corporation.

61. The Panel does not find factual or legal support for Liberty's fraud affirmative defense.

62. Liberty has argued as an affirmative defense denominated "excuse" that Bloom engaged in "multiple material breaches and failures to perform its obligations under the JVA." Specifically, Liberty argues that Bloom breached the JVA by not registering as a law corporation, and by failing to "pay or reimburse Liberty law for all Management Expenses and Case Costs – "at its sole expense" – as obligated under section VI of the JVA."

63. The Panel does not find factual or legal support for Liberty's excuse affirmative defense.

64. The remainder of Liberty's affirmative defenses fall with the Panel's analysis of Liberty's jurisdictional objection, *supra,* and Bloom's *quantum meruit* claim, *infra.*

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Page 17 of 24

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 29 of
38

**Exhibit A - p. 17**

### *Contractual Fee Sharing or Quantum Meruit*

65.    In *Chambers v. Kay* (2002), 29 Cal. 4th 142, the California Supreme Court considered then Rule 2-200(A)(1) that, it said, was approved by the Court "to protect the public and to promote respect and confidence in the legal profession" and that provided, in relevant part, that a member of the State Bar "shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless . . . [t]he client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division."

66.    The *Chambers* Court then denied relief to a lawyer who had not complied with the rule.  In doing so, the Court denied relief based not only on a breach of contract theory, but also on a *quantum meruit* theory, stating:  "In essence, Chambers contends that, notwithstanding the absence of the required written consent, he should be allowed to accomplish indirectly a division of fees under the guise of a *quantum meruit* claim.  We reject the contention."

67.    *Chambers* was followed, however, by *Huskinson & Brown v. Wolf* (2004), 32 Cal. 4th 453.  While referencing and distinguishing *Chambers*, the *Huskinson* Court allowed recovery on a *quantum meruit* basis and said at footnote 2 that *Chambers* "did not resolve the issue presented here . . . .  *Chambers* merely recognized that, to the extent such recovery is available, the particular fee that two attorneys negotiate without the client's consent does not furnish a proper basis for calculating the amount of recovery."

68.    The *California Rules of Professional Conduct* were amended effective November 1, 2018 (*i.e.,* less than a year prior to the Joint Venture Agreement at issue in this arbitration), and relative to a division of fees provided in relevant part:

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Page 18 of 24

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 30 of 38

**Exhibit A - p. 18**

"Rule 1.5.1 Fee Divisions Among Lawyers

(a)    Lawyers who are not in the same law firm shall not divide a fee for legal services unless:

(1)    the lawyers enter into a written agreement to divide the fee;

(2)    the client has consented in writing, either at the time the lawyers enter into the agreement to divide the fee or as soon thereafter as reasonably practicable, after a full written disclosure to the client of: (i) the fact that a division of fees will be made; (ii) the identity of the lawyers or law firms that are parties to the division; and (iii) the terms of the division and

(3)    the total fee charged by all lawyers is not increased solely by reason of the agreement to divide fees."

69.    In a Comment to those new rules, it was acknowledged that a "violation of a rule may have other non-disciplinary consequences" (referencing *Chambers*).  The State Bar California and the California Supreme Court had an opportunity with those 2018 revisions to address the *quantum meruit* issue discussed by the Court in *Chambers* and *Huskinson*, but failed to do so.

70.    Liberty urged the Panel, if and to the extent it determined Bloom was entitled to *quantum meruit*, to adopt a formulation based upon the expense Liberty would have incurred had it hired its own lawyers to perform the services for which Bloom seeks a *quantum meruit* recovery.  The Panel considered carefully the evidence Liberty presented on this issue, including the expert testimony offered by John O'Connor.  The Panel is not persuaded by Liberty's argument on this issue.

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Page 19 of 24

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 19 of
38

**Exhibit A - p. 19**

71.     The Panel evaluated carefully the evidence presented concerning the services performed by Bloom's attorneys and professional staff, and the method whereby they recorded their time and described their work. Further, the Panel reviewed and evaluated the evidence presented concerning the education, training and experience of Bloom's attorneys and professional staff, their hourly rates, as well as the time they expended performing the services. The Panel finds that the reasonable value of the legal services Bloom provided on those cases for which clients did not return signed consent agreements is properly calculated by multiplying the number of hours the attorneys and professional staff expended on the cases by their hourly rates.

## J.     CONCLUSIONS.

72.     The Panel concludes that it has jurisdiction for the reasons set forth above, and makes the following findings:

a.     The JVA is valid and enforceable;

b.     Liberty breached the JVA;

c.     Liberty has not established factual or legal support for its asserted affirmative defenses;

d.     Bloom is entitled to recover damages for breach of contract in the matters where a written client consent was obtained, and pursuant to its *quantum meruit* cause of action in the other matters;

e.     Bloom's cause of action for breach of the implied covenant of good faith and fair dealing affords Bloom no relief beyond that to which it is entitled as described above;

f.     Bloom is entitled to retain all amounts previously paid by Liberty pursuant to the JVA;

g.     Regarding the three resolved cases for which clients executed consents for sharing fees, B.B., K.H. and I.V. (referred to by initials due the sensitive nature of these matters), Bloom is entitled to fifty percent

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 20 of
38

Page 20 of 24

**Exhibit A - p. 20**

(50%) of the attorneys' fees recovered, and is entitled to recover the costs it advanced in those three cases;

   h. Regarding the two resolved cases for which clients did not execute consents for fee sharing, T.N. and D.C., Bloom is entitled to *quantum meruit* for the services it rendered, but not to an award of any costs advanced;

   i. Regarding the five unresolved cases for which clients executed consents to fee sharing, A.M., A.T., V.C., M.M. and M.Z., Bloom is entitled under the JVA to share equally with Liberty in the attorneys' fees received if and when those cases are resolved by settlement, judgment or otherwise, but not to an award of any costs advanced;

   j. Regarding the six unresolved cases for which clients did not execute consents for fee sharing, M.A., Cal. Dem., G.G., A.B., T.D. and M.P., Bloom is entitled to recover in *quantum meruit* for the services it rendered if and when those cases are resolved in the plaintiffs' favor by way of settlement, judgment or otherwise, but not to an award of any costs advanced;

   k. Liberty is entitled to a $71,629.53 setoff – representing unpaid management expenses and case costs for which Bloom is responsible under the JVA - against damages to which Bloom is otherwise entitled;

   l. Prejudgment interest will not be awarded; and

   m. Attorneys' fees are not available under the JVA. The Panel finds that well-before the Evidentiary Hearing, Liberty's operative pleadings were amended to delete any request for attorney's fees. Accordingly, the AAA Rules do not authorize an award of attorneys' fees. The Panel is not aware of any other basis for an attorneys' fee award, and the Parties have not suggested any.

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401 Doc# 58 Filed: 07/01/24 Entered: 07/01/24 17:43:35 Page 33 of
38

Page 21 of 24

**Exhibit A - p. 21**

### K.    SCOPE OF RELIEF AVAILABLE.

73.    Under an arbitration clause such as that contained in the JVA, the Panel has the authority to grant any kind of legal or equitable relief that could be obtained in a court of law and to fashion an appropriate remedy provided the remedy derives its essence from the Parties' agreement. The Panel, "unless expressly restricted by the agreement of the parties, enjoy[s] the authority to fashion relief . . . [it] consider[s] just and fair under the circumstances existing at the time of arbitration, so long as the remedy may be rationally derived from the contract and the breach." *Advanced Micro Devices, Inc. v. Intel Corp.*, 9 Cal. 4th 362, 383 (1994). The Panel may, for example, consider the relationship of parties in fashioning an award so as to prevent one party from taking "unfair advantage" of another and the choice of a specific remedy may call on the Panel's flexibility, creativity and sense of fairness. *Advanced Micro* at 374.

### L.    AWARD.

74.    In addition to retaining the amounts previously received under the JVA, The Bloom Firm shall have and recover from Liberty Law Office, Inc. Eight Hundred Twenty-One Thousand Four Hundred Dollars and Seventy Cents ($821,400.70) calculated as follows:

| Case | Recovery | Fees | Costs | Total |
|------|----------|------|-------|-------|
| B.B. | Contract | $ 450,000.00 | $     216.23 | $ 450,216.23 |
| I.V. | Contract | $ 238,000.00 | $       21.31 | $ 238,021.31 |
| K.H. | Contract | $   79,767.82 | $ 15,176.87 | $   94,944.69 |
| D.C. | *Quantum Meruit* | $   80,969.50 | $          - | $   80,969.50 |
| T.N. | Quantum Meruit | $   28,878.50 | $          - | $   28,878.50 |
| | | | | |
| | *SUB-TOTALS:* | $ 877,615.82 | $ 15,414.41 | $ 893,030.23 |
| | | | | |
| | *Offset Due Liberty* | | | $ (71,629.53) |
| | | | | |
| | **TOTAL DUE ON RESOLVED CASES** | | | **$ 821,400.70** |

FINAL ARBITRATION AWARD
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 22 of 24
38

Exhibit A - p. 22

75.     Within thirty (30) days of Liberty Law Office, Inc.'s receipt of any attorneys' fees for work performed in connection with its representation of the plaintiff / claimant in any or all of the following cases, Liberty Law Office, Inc. shall pay to The Bloom Firm fifty-percent (50%) of those attorneys' fees: A.M., A.T., V.C., M.M. and M.Z.

76.     Within thirty (30) days of Liberty Law Office, Inc.'s receipt of any attorneys' fees for work performed in connection with its representation of the plaintiff / claimant in any or all of the following cases, Liberty Law Office shall pay to The Bloom Firm the following sums:

| Case | Recovery | Amount |
|------|----------|--------|
| M.A. | *Quantum Meruit* | $ 128,333.50 |
| Cal. Dem. | *Quantum Meruit* | $ 28,958.00 |
| G.G. | *Quantum Meruit* | $ 332,300.00 |
| A.B. | *Quantum Meruit* | $ 949.00 |
| T.D. | *Quantum Meruit* | $ 383.50 |
| M.P. | *Quantum Meruit* | $ 253.50 |

77.     Bloom's claim concerning the *Udacity* matter, to the extent that claim is not addressed in the individual matters described in Paragraphs 74 – 76, *supra*, is denied.

78.     The administrative fees and expenses of the AAA totaling $23,000.00 and the compensation of the Arbitrators totaling $180,395.00 are to be borne by Liberty Law Office, Inc. Therefore, Liberty Law Office, Inc. shall pay to The Bloom Firm $160,020.00 which represents all of the administrative fees and the compensation of the Arbitrators heretofore paid by The Bloom Firm, including the amounts previously advanced by The Bloom Firm on behalf of Liberty Law Office, Inc.

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 23 of 24
38

Page 35 of 38

Exhibit A - p. 23

79.    This Final Arbitration Award is in full settlement of all claims and counter-claims, if any, submitted in this arbitration.  All claims and counter-claims, if any, not expressly granted herein are denied.

Dated:  August 25, 2021

_____
Peter K. Rundle, Arbitrator & Chair

Digitally signed by Peter K. Rundle
Date: 2021.08.25 15:15:39 -07'00'

Dated:  August __, 2021

_____
Carl F. Ingwalson, Jr., Arbitrator

Dated:  August __, 2021

_____
Sol Rosenthal, Arbitrator

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Page 24 of 24

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 36 of 38

**Exhibit A - p. 24**

79.    This Final Arbitration Award is in full settlement of all claims and counter-claims, if any, submitted in this arbitration. All claims and counter-claims, if any, not expressly granted herein are denied.


Dated: August ___, 2021          _____
                                 Peter K. Rundle, Arbitrator & Chair



Dated: August 25, 2021           _____
                                 Carl F. Ingwalson, Jr., Arbitrator



Dated: August ___, 2021          _____
                                 Sol Rosenthal, Arbitrator

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*

Page 24 of 24

Case: 24-40401    Doc# 58    Filed: 07/01/24    Entered: 07/01/24 17:43:35    Page 37 of 38

**Exhibit A - p. 25**

79.     This Final Arbitration Award is in full settlement of all claims and counter-claims, if any, submitted in this arbitration.  All claims and counter-claims, if any, not expressly granted herein are denied.

Dated:  August \_\_, 2021     _____
                                                 Peter K. Rundle, Arbitrator & Chair

Dated:  August \_\_, 2021     _____
                                                 Carl F. Ingwalson, Jr., Arbitrator

Dated:  August 25, 2021     *Sol Rosenthal*
                                                 Sol Rosenthal (Aug 25, 2021 14:05 PDT)
                                                 _____
                                                 Sol Rosenthal, Arbitrator

**FINAL ARBITRATION AWARD**
AAA Case No. 01-20-0005-4767
*The Bloom Firm*
vs.
*Liberty Law Office, Inc.*